**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------

RYAN O'DELL,                         :

                                     :

             Plaintiff,           :  Civil Action No. 23-cv-8212

                                     :

v.                               :  **COMPLAINT FOR VIOLATIONS OF**

                               :  **SECTIONS 14(a) AND 20(a) OF THE**

VERITIV CORPORATION, STEPHEN E.    :  **SECURITIES EXCHANGE ACT OF**

MACADAM, SALVATORE A. ABBATE,     :  **1934**

AUTUMN R. BAYLES, SHANTELLA E.     :

COOPER, DAVID E. FLITMAN, TRACY A.  :  **JURY TRIAL DEMANDED**

LEINBACH, GREGORY B. MORRISON,    :

MICHAEL P. MULDOWNEY, and        :

CHARLES G. WARD, III,             :

                                     :

             Defendants.         :

----------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against Veritiv Corporation ("Veritiv or the "Company") and the members Veritiv's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Veritiv by affiliates of Clayton, Dubilier & Rice, LLC ("CD&R"), a private equity firm.

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the

"Proxy Statement") to be filed on September 18, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Verde Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Verde Purchaser, LLC ("Parent"), will merge with and into Veritiv, with Veritiv surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on August 6, 2023 (the "Merger Agreement"), each Veritiv stockholder will receive $170.00 in cash (the "Merger Consideration") for each Veritiv share owned. Merger Sub and Parent are both affiliates of CD&R.

3.      As discussed below, Defendants have asked Veritiv's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Veritiv's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, the owner of Veritiv stock and has held such stock since prior to the wrongs complained of herein.

10.      Individual Defendant Stephen E. Macadam has served as a member of the Board since 2020 and is the Chairman of the Board.

11.      Individual Defendant Salvatore A. Abbate has served as a member of the Board since 2020.

12.      Individual Defendant Autumn R. Bayles has served as a member of the Board since 2022.

13.      Individual Defendant Shantella E. Cooper has served as a member of the Board since 2020.

14.      Individual Defendant David E. Flitman has served as a member of the Board since 2017.

15.     Individual Defendant Tracy A. Leinbach has served as a member of the Board since 2014.

16.     Individual Defendant Gregory B. Morrison has served as a member of the Board since 2021.

17.     Individual Defendant Michael P. Muldowney has served as a member of the Board since 2014.

18.     Individual Defendant Charles G. Ward, III has served as a member of the Board since 2014.

19.     Defendant Veritiv is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 1000 Abernathy Road NE, Building 400, Suite 1700, Atlanta, Georgia 30328. The Company's stock trades on the New York Stock Exchange under the symbol "VRTV."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

22.     Veritiv operates as a business-to-business provider of value-added packaging products and services, facility solutions, and print based products and services in the United States and internationally. It operates through Packaging, Facility Solutions, and Print segments. The Packaging segment provides packaging product materials within flexible, corrugated and fiber, ancillary packaging, rigid, and equipment categories. The Facility Solutions segment sources and sells cleaning, break-room, and other supplies in various product categories that include towels

4

and tissues, food service, personal protective equipment, cleaning chemicals, and skincare, as well as re-merchandising, budgeting and compliance reporting, and inventory management services. The Print segment sells and distributes commercial printing, writing, copying, paper, and graphics products. This segment also provides print management, paper procurement, and supply chain management solutions. It serves manufacturing, food and beverage, wholesale and retail, healthcare, transportation, property management, higher education, entertainment and hospitality, commercial printing, and publishing sectors. The Company was incorporated in 2013 and is headquartered in Atlanta, Georgia.

23.    On August 7, 2023, the Company announced the Proposed Transaction:

ATLANTA, Aug. 7, 2023 /PRNewswire/ -- Veritiv Corporation (NYSE: VRTV), a leading distributor of packaging, facility solutions and print products, announced today that it has entered into a definitive agreement to be acquired by an affiliate of Clayton, Dubilier & Rice, LLC (CD&R). Under the terms of the agreement, each share of Veritiv common stock issued and outstanding immediately prior to the closing of the transaction will be entitled to receive $170 per share in cash, representing a nearly 31% premium over Veritiv's 30-day volume-weighted average price of $129.89.

Having determined that the offer is in the best interests of the company and its shareholders, Veritiv's Board of Directors has unanimously voted to approve the transaction and recommends that shareholders vote in favor of the transaction.

"This agreement is a pivotal moment in Veritiv's history," said Sal Abbate, Chief Executive Officer of Veritiv. "CD&R's interest in our company is a testament to our team's hard work, innovation, and dedication. Fueled by this partnership, we will continue to evolve towards our greatest potential, delivering innovative and sustainable solutions to our customers today – and into the future."

Rob Volpe, Partner at CD&R, said, "Veritiv is a very well-positioned industry leader with differentiated capabilities that deliver value to customers. We look forward to supporting Veritiv's talented leadership team in this next phase of the company's growth, as they continue to pursue their long-term strategic objectives while maintaining an unwavering commitment to employees, suppliers, and customers."

The transaction remains subject to shareholder approval and other customary closing conditions, including the receipt of required regulatory approvals, and is expected to close in the fourth quarter of 2023. Upon the completion of the transaction, Veritiv will become a privately held company and shares of Veritiv common stock will no longer be listed on any public markets.

"As Veritiv's largest shareholder, we are supportive of this transaction," said Greg Ciongoli, Partner, The Baupost Group. "The Veritiv management team has successfully executed on its multi-year strategy to drive significant growth and they have built substantial value in the business, which is reflected in the premium paid for the shares. Combined with CD&R's business-building expertise, we believe Veritiv's future is very bright."

In connection with the transaction, funds managed by Baupost entered into a Support Agreement under which they have agreed to vote their shares in favor of the transaction.

**Advisors**

Morgan Stanley & Co. LLC served as exclusive financial advisor and Alston & Bird LLP served as legal counsel to Veritiv.

CD&R obtained committed financing from Goldman Sachs, RBC Capital Markets, LLC, Wells Fargo Securities, BMO Capital Markets Corp., and UBS Investment Bank. Guggenheim Securities, LLC and Wells Fargo Securities served as lead financial advisors to CD&R, and BMO Capital Markets Corp., Goldman Sachs, RBC Capital Markets, LLC, and UBS Investment Bank also served as financial advisors. Kirkland & Ellis LLP and Debevoise & Plimpton LLP served as legal counsel to CD&R.

\* \* \*

24.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Veritiv's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25.     On September 18, 2023, Veritiv filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's

stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by Veritiv management and relied upon by Morgan Stanley in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Morgan Stanley with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Veritiv management provided to the Board and Morgan Stanley. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered

Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement,

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analyses*

31.     With respect to Morgan Stanley's *Comparable Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics for each company selected by Morgan Stanley for the analysis; and (ii) the inputs and assumptions underlying the ranges of EBITDA multiples selected by Morgan Stanley.

32.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal value for the Company; (ii) the inputs and assumptions underlying the inputs and assumptions underlying the range of AV/Adjusted EVITDA exit multiple ranging from 4.5x to 6.5x; (iii) the inputs and assumptions underlying the discount rates ranging from 10.8% to 12.6%; (iv) the weighted cost of capital of the Company; (v) Veritiv's net debt as of June 30, 2023; and (vi) the number of fully diluted outstanding shares of Veritiv's common stock as of July 14, 2023.

33.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the inputs and assumptions underlying the range of AV/Adjusted EVITDA ratio range of 4.5x to 6.5x; (ii) the inputs and assumptions underlying the discount rate of 12.2%; and (iii) the cost of equity of the Company.

34.     With respect to Morgan Stanley's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics of each transaction selected by Morgan Stanley for the analysis; (ii) the basis for applying a reference range of AV/LTM EBITDA multiples of 7.5x to 11.0x to the Company's LTM EBITDA as of July 1, 2023.

35.     With respect to Morgan Stanley's *U.S. Public Company Premiums Paid* analysis, the Proxy Statement fails to disclose: (i) the transactions observed; and (ii) the premia of each of the transactions.

36.     With respect to Morgan Stanley's *Broker Price Targets* analysis, the Proxy Statement fails to disclose: (i) the equity research analysts reviewed by Morgan Stanley; and (ii) the price targets published by each analyst.

37.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

42.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

43.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

11

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully

protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section
20(a) of the Exchange Act**

44.      Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

45.      The Individual Defendants acted as controlling persons of Veritiv within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of Veritiv, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Veritiv, including the content and dissemination of

the various statements that Plaintiff contends are materially incomplete and misleading.

46.      Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

47.      In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of Veritiv, and, therefore, is presumed to have had the

power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same.  The omitted information identified above was reviewed

by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual

Defendants were thus directly involved in the making of the Proxy Statement.

48.     In addition, as the Proxy Statement sets forth at length, and as described herein, the

Individual Defendants were involved in negotiating, reviewing, and approving the Merger

Agreement.  The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered.   The Individual Defendants participated in

drafting and/or gave their input on the content of those descriptions.

49.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

of the Exchange Act.

50.     As set forth above, the Individual Defendants had the ability to exercise control

over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate

result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that

Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants

jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents,

employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 18, 2023                    **MELWANI & CHAN LLP**


By:   */s/ Gloria Kui Melwani*
       Gloria Kui Melwani (GM5661)
       1180 Avenue of the Americas, 8th Fl.
       New York, NY 10036
       Telephone: (212) 382-4620
       Email: gloria@melwanichan.com

       *Attorneys for Plaintiff*